# SUPREME COURT

OF THE

# STATE OF ARKANSAS,

AT THE

## MAY TERM, 1881.

---

### DYER v. ARNOLD, ET AL.

1. HUSBAND AND WIFE: *Right to property purchased with wife's funds.*
   A homestead purchased by the husband with money given to the
   wife during the coverture, and coming to his possession, belongs
   to him; and so, also, does personal property so purchased, and can-
   not be screened from his debts by the scheduling of it as her sep-
   arate property.
2. SAME. *Property rights of wife under Constitution of 1868.*
   Under the Constitution of 1868 a wife could acquire and hold personal
   property, but it was not protected from her husband's debts until
   scheduled.

APPEAL from *White* Circuit Court in Chancery.

Hon. J. N. CYPERT, Circuit Judge.

2—37

Dyer v. Arnold et al.

*Coody*, for appellant:

The property was the wife's; never reduced into possession by the husband. 14 *Ark.*, 604; 16 *Ib.*, 154.

The wife, after the Act of 1875, and before appellee's. judgment, scheduled the property which had been purchased. by the husband with her means. ˙33 *Ark.*, 611; 23 *Texas*, 180; 2 *Bishop on Married Women, sec.* 101.

The laws of another State are presumed to be the same· with our own. 14 *Ark.*, 603. But it would be the same· under common law principles. ˙ 30 *Ark.*, 79; *Act 1875*, *Ad. Sess., p.* 172.

After scheduling the presumption is that the husband used the property as agent of the wife. (See Act.)

*J. W. House*, for appellee:

The property on marriage became fully ˙vested in the· husband. 8 *Ark.*, 310; 9 *Ib.*, 202; 15 *Ib.*, 180; 19 *Ib.*, 66; 25 *Ib.*, 223; 30 *Ib.*, 79.

The burden of proof, ˙of showing different law in Tennessee, is in plaintiff. 15 *Ark.*, 180

She was estopped by her conduct in allowing the husband to manage and control the property.

ENGLISH, C. J. On the fourth of August, 1877, John W. Arnold, a merchant of West Point, White county, obtained a judgment against J. H. Dyer, a farmer of that. vicinity, before a Justice of the Peace of Red River township, in said county, for $335.53, debt, damages, etc. On the fourteenth of December, of the same year, an execution was issued upon the judgment to James L. Brewer, Constable of the township, and by him "levied on about. five acres of cotton in the patch, and two hundred pounds in the pen; fifteen acres of corn in the field, and eight or ten bushels in the crib; one ton of millet; two mare mules;

wagon and harness ; one buggy ; sixteen head of cattle ; seventy head of hogs ; and all farming tools, household and kitchen furniture,'' as the property of defendant in the execution, and advertised them for sale.

It appears that Arnold, the plaintiff in the execution, was a dealer in general merchandise, and during the years 1874 and 1875 sold to Dyer, the defendant in the execution, dry goods, groceries and family supplies. Partial payments were made in money and cotton, and a note given by Dyer for balance, and the judgment was for principal and interest of the note.

On the seventeenth of December, 1877, Mrs. Judie E. Dyer, wife of J. H. Dyer, filed a bill on the Chancery side of the Circuit Court of White county against John W. Arnold, plaintiff in the execution, and James L. Brewer, the Constable, claiming the property levied on, and praying that the sale thereof be enjoined.

An interlocutory injunction was granted, and on the final hearing upon bill, answer and depositions, it was dissolved. The bill dismissed, Mrs. Dyer appealed, and obtained here an order for an ancillary injunction to stay the sale of the property until the cause could be heard and determined on her appeal.

Mrs. Dyer alleges in her bill that on the twenty-eighth of October, 1876, she owned, as separate property, and scheduled in the office of the Clerk of the Circuit Court of White county : '' Two dark bay mules ; one wagon ; one set of harness ; fourteen head of cattle ; fifty head of hogs ; four turning plows ; five shovel plows ; five cotton hoes ; three feather beds ; three mattresses ; four bedsteads ; one bureau ; one clock ; one sewing machine ; one dining table ; one cooking stove ; one safe ; six chairs ; one trunk, and bed clothing,'' and exhibits a certified copy of her schedule.

She also alleges that all of the property levied on, ex-

cept the buggy, is her property, "and the same as sched-
uled by her, including the issues and proceeds arising there-
from, and produced with the same upon her account, and as
her sole and separate property."

She further alleges that the crop of cotton and corn lev-
ied on was grown upon the homestead of herself and her
husband in White county.

When or how she acquired the property scheduled by
her, the bill does not allege, nor is anything more alleged
than as above of the homestead.

The defense was that the crop was produced by the hus-
band on land owned by him; that the scheduled property
belonged to him when the schedule was filed; that he had
contracted the debt in judgment, and others, on faith of the
property, representing it to be his, and it was afterwards
scheduled by the wife to shield it from and defraud his
creditors.

### AS TO THE HOMESTEAD CROP.

I.   The cotton, corn and millet were not in the wife's
schedule.   She claims that the crop of cotton and corn were
exempt, because grown upon the homestead of herself and
husband, and produced with her means.

B. K. Rogers deposed that about the first of July, 1873,
he sold to J. H. Dyer the southwest quarter of section 18,
T. 6, N. R. 5, W. for $1000, and made to him a deed for
the land; that Dyer did not represent to him that the money
paid to him for the land was his wife's, but bought as any
other individual; that he took possession of the land early
in the year 1874, and had occupied it ever since.

Mrs. Dyer deposed that she was married to J. H. Dyer
after she was of age, in Lauderdale county, Tennessee; he
had nothing; after her marriage she received from her
mother, who had been her guardian, about $1,400
left her by her grand-mother; she and her husband

continued to live with her mother, and he engaged
in farming for over six years after their marriage, and
she gave him money to spend when she wanted any-
thing, and to loan out. He did not loan out all the money,
but would loan out two, or three, or four hundred dollars
at a time. They moved from Tennessee to Jackson county,
in this State, (bringing $920 with them in money), in Feb-
ruary, 1871, where he engaged in farming for two years
before they moved to White county, and "made a right
smart of money." They brought about $2000 to White
county. Mr. Dyer brought $1800 of it to White county to
buy land, and bought the place they lived on, (though he
did not spend all of it for the land), and had the title of
it made to himself, but talked of having it made to her.

It is manifest, from the evidence, that the homestead
was the property of the husband, and not of the wife, or
their joint property. There was no evidence to prove that
the cotton and corn grown upon the homestead, gathered
and ungathered, were the property of the wife. They
were, no doubt, as the Court below found, the property of
the husband. The Constable levied on about five acres of
cotton and fifteen acres of corn in the field of the home-
stead. The levy was made on the fourteenth of December,
and after the crops were matured.

Whether an ungathered crop is the subject of execution,
or if it is, whether the owner of a homestead may claim
an unsevered crop produced by him upon it as exempt from
execution, the homestead being exempt, are questions not
presented in this case. The husband, the owner of the
homestead and the crop, is not claiming an exemption. It
is the wife who filed the bill.

II. The Court below found, from the evidence, but part
of which is stated above, that the property levied on (that
scheduled by the wife, as well as the cotton and corn pro-

1 HUSBAND
AND WIFE:
Right to
property
bought
with wife's
funds.

duced on the homestead) was the property of the husband, and not of the wife; and notwithstanding the expressions of the wife, and her witnesses, in their depositions, that the property belonged to her, the facts stated by them, and other witnesses, warranted the Court in finding against her claims.

The court found that the money left the wife by her grand-mother, came to the possession of the husband after their marriage in Tennessee, and thereby become his; and if all the scheduled property was bought with that identical money, which is not probable from the evidence, it belonged to him when scheduled. Most of it was purchased after they moved to this State.

No statute of Tennessee barring the husband's common law right to the personal property and money of the wife on reducing them to possession was in evidence. See *Tatum v. Hines*, 15 *Ark.*, 180. Property afterwards purchased by him with the money, or its fruits, would also be his. *Ferguson et al*, v. *Moore and wife*, 19 *Ib.*, 379.

It is probable, from the evidence, that most of the scheduled property was purchased after Dyer and wife came to this State, and before the adoption of the present Constitution, (1st November, 1874), and when the Constitution of 1868 was in force.

2. SAME: Property rights of wife under Constitution of 1868 Schedule necessary. Under Section 6, Article 12, of the Constitution of 1868, Mrs. Dyer could acquire and hold personal property, but it was not protected against the debts of her husband until scheduled. *Humphries* v. *Harrison*, 30 *Ark.*, 79; *Berlin* v. *Cantrell*, 33 *Ib.*, 611.

If the property in question was purchased with her money, and for her, as she insists, she should have scheduled it before her husband contracted debts on faith of it, and it was afterwards too late. *Berlin* v. *Cantrell, Supra*; *Howell* v.

*Howell, Ad.*, 19 *Ark.*, 344; *Beeman and wife* v. *Cowser et al*, 22 *Ib* , 432. .

We have not overlooked the fact that this was a bill to enjoin the sale of ordinary personal property under execution, but there was no objection to the bill on that ground in the Court below, and the cause was heard on the merits, and the bill dismissed. We need not, therefore, consider the question of jurisdiction. See *Sanders* v. *Sanders et al*, 20 *Ark.*, 610, *modifying Lovette and wife* v. *Longmire*, 14 *Ib.*, 339.

Affirmed.